IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| TP GROUP-CI, INC., <br><br> Plaintiff; <br><br> v. <br><br> IVAN VETECNIK <br><br> Defendant. | Civil Action No. 1:16-cv-00623-RGA |

MEMORANDUM OPINION

Colm F. Connolly, Esq., MORGAN, LEWIS & BOCKIUS LLP, Wilmington, DE; Jody C. Barillare, Esq., MORGAN, LEWIS & BOCKIUS LLP, Wilmington, DE; Daniel D. Rubinstein, Esq., WINSTON & STRAWN, LLP, Chicago, IL; William C. O'Neil, Esq., WINSTON & STRAWN, LLP, Chicago, IL; Michael A. Skokna, Esq., WINSTON & STRAWN, LLP, Chicago, IL.

　Attorneys for Plaintiff

Ivan Vetecnik, Salt Lake City, Utah, pro se.

October 6, 2016

ANDREWS, U.S. DISTRICT JUDGE:

Presently before the Court is Plaintiff's Motion for a Preliminary Injunction (D.I. 3) and related briefing (D.I. 21, 24, 25). For the reasons set forth below, Plaintiff's Motion for a Preliminary Injunction (D.I. 3) is **GRANTED**.

I. **BACKGROUND**

Plaintiff TP Group-CI, Inc. is a Delaware corporation headquartered in Chicago, Illinois. (D.I. 1 at ¶10). TP-Group is a holding company that is the sole owner of Clinical Innovations ("CI"), a company that manufactures, among other things, urinary and intrauterine catheters. (D.I. 21 at 5). Defendant Vetecnik was employed by CI as an engineer until June 14, 2016, when CI terminated his employment. (*Id.* at 7).

In January 2011, Defendant entered into a stock option agreement with CI in return for signing non-compete and confidentiality agreements. (*Id.* at 7-8). The non-compete prohibits Defendant from working for companies that "design and manufacture . . . medical devices used in the fields of women's and infant's health, urology and gastroenterology" for a period of two years post-termination. (*Id.* at 8). The confidentiality agreement prohibits use or disclosure of confidential information Defendant learned during the course of his employment. (*Id.* at 9).

In June 2016, CI discovered that Defendant had been working for one of CI's former owners on the side, using CI's equipment to build machines to support the former owner's competing catheter business, Biomerics. (*Id.* at 10). In addition, Plaintiff alleges that Defendant disclosed confidential information to the former owner. (*Id.*). After CI terminated Defendant, he accepted employment at Biomerics. (D.I. 24 at 2). Defendant has since left Biomerics and is currently unemployed. (*Id.* at 3).

1

## II. LEGAL STANDARD

"A preliminary injunction is an extraordinary remedy that should be granted only if (1) the plaintiff is likely to succeed on the merits; (2) denial will result in irreparable harm to the plaintiff; (3) granting the injunction will not result in irreparable harm to the defendant; and (4) granting the injunction is in the public interest." *NutraSweet Co. v. Vit-Mar Enterprises, Inc.*, 176 F.3d 151, 153 (3d Cir. 1999) (internal citation omitted). Only if the movant produces evidence sufficient that all four factors favor preliminary relief should the injunction issue. *Opticians Ass'n of Am. v. Indep. Opticians of Am.* 920 F.2d 187, 192 (3d Cir. 1990). The present dispute involves the enforcement of restrictive covenants. The parties agree that Delaware law governs.

## III. ANALYSIS

### A. Plaintiff Is Likely to Succeed on the Merits

Plaintiff has provided substantial evidence that Defendant has breached both the non-compete and the confidentiality agreements. Defendant's only argument with respect to the non-compete is that he was not aware of the existence of the agreement. (D.I. 24 at 2). The law is well settled, however, that failure to read a contract does not excuse performance. *Graham v. State Farm Mut. Auto. Ins. Co.*, 565 A.2d 908, 913 (Del. 1989). "A party to a contract cannot silently accept its benefits and then object to its perceived disadvantages, nor can a party's failure to read a contract justify its avoidance." *Id.*

As to the confidentiality agreement, Defendant argues that he did not violate the agreement because he "did not learn anything new" while employed by CI and because he "was the one who [taught CI] about the 'new' production techniques." (D.I. 24 at 3). Defendant also acknowledges, however, that the new techniques he developed while employed by CI are Plaintiff's intellectual property. Defendant responds to Plaintiff's evidence with only a conclusory statement that he did

2

not and would not share confidential information. (*Id.*). This is insufficient to rebut Plaintiff's substantial evidence that Defendant used and shared Plaintiff's confidential information in breach of the restrictive covenant.

Because Defendant has failed to rebut Plaintiff's substantial evidence of breaches of both agreements, the only issue to address with respect to Plaintiff's likelihood of success is the enforceability of the agreements. To be enforceable under Delaware law, a restrictive covenant "must (1) meet general contract law requirements, (2) be reasonable in scope and duration, (3) advance a legitimate economic interest of the party enforcing the covenant, and (4) survive a balance of the equities." *Tristate Courier & Carriage, Inc. v. Berryman*, No. C.A. 20574-NC, 2004 WL 835886, at *10 (Del. Ch. Apr. 15, 2004).

The restrictive covenants meet the requirements of contract law because Defendant made promises not to compete and not to reveal confidential information, and in return he received consideration in the form of valuable stock options. *Id.* The restrictive covenants are reasonable in geographic scope because the restriction is limited to Plaintiff's competitive market. *Id.* at *11. Furthermore, Delaware courts have routinely found restrictive covenants with a duration of two years to be reasonable in duration. *Weichert Co. of Pennsylvania v. Young*, C.A. No. 2223-VCL, 2007 WL 4372823, at *3 (Del. Ch. Dec. 7, 2007). Protecting a company's goodwill and confidential information are recognized as legitimate economic interests advanced by the restrictive covenants. *Tristate Courier & Carriage, Inc.*, 2004 WL 835886, at *10. Finally, Defendant's extensive knowledge of Plaintiff's confidential information would make "his competition with plaintiff's business . . . particularly effective and unfair," tipping the balance of equities in favor of enforcement. *McCann Surveyors, Inc. v. Evans*, 611 A.2d 1, 4 (Del. Ch. 1987).

## B. Denial Will Result in Irreparable Harm to Plaintiff

Under Delaware law, "contractual stipulations as to irreparable harm alone suffice to establish that element for the purpose of issuing preliminary injunctive relief." *Cirrus Holding Co. v. Cirrus Indus., Inc.*, 794 A.2d 1191, 1209 (Del. Ch. 2001). Here, the restrictive covenants to which Defendant agreed include a stipulation that if Defendant were to breach the covenants, CI would suffer "irreparable harm." (D.I. 22 at 15). In the same provision, Defendant agreed to "a remedy of . . . injunctive or other relief in order to enforce or prevent any violations" of the restrictive covenants. (*Id.* at 16). Even without this stipulation, Plaintiff has demonstrated that Defendant's breach has already caused harm and that further harm is likely if the covenants are not enforced. For example, one of CI's customers has shifted some of its business to Biomerics and has indicated that CI might lose all of its business in the future. (D.I. 21 at 14). Therefore, Plaintiff has adequately shown it will suffer irreparable harm unless the injunction issues.

## C. Defendant Will Not Suffer Irreparable Harm

Enforcing the agreement is unlikely to cause irreparable harm to Defendant as he will not be enjoined for finding suitable employment. Defendant will only be restricted from working in the very narrow "fields of women's and infant's health, urology and gastroenterology." (D.I. 21 at 23). Defendant is free to find employment as an engineer and may even work on medical devices that are not related to these fields.

## D. The Injunction Is in the Public Interest

The public interests at issue in this case are enforcing private contracts and the rights of employees to seek employment with any company for which they wish to work. *Bimbo Bakeries USA, Inc. v. Botticella*, 613 F.3d 102, 119 (3d Cir. 2010). In a case such as this one, however,

protecting Plaintiff's confidential information outweighs the temporary restrictions on Defendant's employment options. *Id.*

### E. Bond Requirement

"The court may issue a preliminary injunction . . . *only if the movant gives security* in an amount the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P 65(c) (emphasis added). The parties' agreement purports to allow for injunctive relief "without posting a bond or other security." (D.I. 22 at 16). This "agreement is in tension with the requirements of Rule 65(c)," however. *PharMethod, Inc. v. Caserta*, 382 F. App'x 214, 222 (3d Cir. 2010). While there may be rare exceptions where a bond is not required, "absent circumstances where there is no risk of monetary loss to the defendant, the failure of a district court to require a successful applicant to post a bond constitutes reversible error." *Frank's GMC Truck Ctr., Inc. v. Gen. Motors Corp.*, 847 F.2d 100, 103 (3d Cir. 1988). Here, the restrictive covenant imposes restrictions on Defendant's future employment and, because of this, Defendant risks monetary loss. For this reason, it would be inappropriate to waive the bond requirement despite the parties' agreement. The court has discretion to determine the amount of the bond. *Id.* It seems to me that a reasonable amount is $250,000, which is a little less than Defendant's salary for two years. Plaintiff is hereby required to provide a security bond in the amount of $250,000.

### IV. CONCLUSION

For the reasons set forth herein, Plaintiff's Motion for a Preliminary Injunction is **GRANTED**.

5

Plaintiff has submitted a proposed order that largely tracks the language of the restrictive covenants and is of reasonable scope. Therefore, this order will be entered as soon as Plaintiff posts the required security bond of $250,000.

6